UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11452-RGS

JESSE SANTOS

v.

SANYO MANUFACTURING CORP.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS
THE AMENDED COMPLAINT

May 3, 2013

STEARNS, D.J.

Plaintiff Jesse Santos (Santos) brought this proposed class action against
SANYO Manufacturing Corp. (SANYO), alleging breaches of warranty and fraud.
Santos claims that SANYO deliberately or negligently sold defectively manufactured
television sets to unsuspecting consumers (of which he was one).  SANYO now moves
to dismiss the Amended Complaint.  For the reasons to be explained, SANYO's motion
will be allowed.

BACKGROUND

SANYO designs, manufactures, markets, and sells LCD and plasma televisions.
Santos purchased a SANYO plasma television from an authorized dealer in
Massachusetts sometime in 2006.  The television set came with an express warranty

guaranteeing against manufacturing defects for one year from the date of purchase.  In 2010, Santos's SANYO television suddenly failed without warning.  Santos notified SANYO of the malfunction.  SANYO, however, refused to repair or replace the set because the failure had occurred outside of the window of the one-year warranty. Santos as a result was forced to purchase a new television (presumably from a manufacturer other than SANYO).

Santos alleges that his television's unanticipated failure was not an anomaly, but the predictable result of manufacturing and component problems that ultimately caused a significant number of SANYO's plasma and LCD television models (the class televisions) to fail prematurely.  The Amended Complaint states that all of the class televisions "are predisposed to premature performance degradation and/or complete and total failure" because of

> insufficient ventilation and heat sinks and/or thermal paste to dissipate heat and/or insufficient heat shielding between components; . . . sub-standard electronic components that prematurely fail including but not limited to components that have insufficient temperature and voltage performance . . .; and, [e]lectronic circuitry in class televisions [that] is defectively designed and manufactured including but not limited to the printed wiring boards and subcomponents located on and adjacent to the boards.

Am. Comp. ¶¶ 93, 114, 119, 130.  According to Santos, one-quarter to one-third of the class televisions failed before the expiration of their normal life expectancy.

The cusp of the Amended Complaint is the allegation that SANYO, despite its knowledge of the propensity of the class televisions to fail, engaged in a "continuing fraud" to conceal the defects from buyers.  As part of the scheme to defraud, "SANYO tailored its class television warranty so that class televisions would fail shortly after the warranty expired to avoid costs associated with manufacturer warranty repairs."  Pl. Br. at 3.  Santos asserts the following claims against SANYO as the representative of a proposed nationwide class of dissatisfied SANYO customers: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) violations of Mass. Gen. Laws ch. 93A; (6) unjust enrichment; and (7) "supplemental" claims of violation of various other states' consumer protection laws should Massachusetts law be found not to apply uniformly to the nationwide class.

## DISCUSSION

SANYO moves to dismiss Santos's claims pursuant to Fed. R. Civ. 12(b)(1) on the rather curious ground that Santos lacks Article III standing to prosecute his claims. SANYO also makes a more convincing  Rule 12(b)(6) argument that Santos has failed to plead a viable cause of action.  The lack-of-standing suggestion derives from an outlier New Jersey district court case, *Chan v. Daimler AG*, 2012 WL 5827448 (D.N.J. Nov. 9, 2012).  In *Chan*, the court held that plaintiff automobile purchasers lacked

standing to pursue their warranty claims because the engine defects providing the basis for the claims did not manifest themselves until after the purchasers' warranties had expired. *Id.* at *6-8. The opinion appears to conflate the Article III "injury in fact" requirement with the "plausible" pleading standard of Rule 12(b)(6). Here, Santos has clearly alleged a concrete, particularized "injury in fact," namely that the SANYO television that he purchased was defective and that he was forced to bear the expense of replacing it. Santos has also put forward legal theories that, if credited, would provide him with a remedy from SANYO, namely reimbursement of the replacement cost of his SANYO television. Rather than dwell on a constitutional theory of dubious import, the court will turn to SANYO's more plausible Rule 12(b)(6) motion to dismiss.

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 555 (internal citations omitted); s*ee also Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95-96 (1st Cir. 2007). Furthermore, claims sounding in fraud must satisfy a heightened pleading standard. "In all averments of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "[G]eneral averments of the defendant['s] knowledge of material falsity will not suffice . . . . [Rather,] the complaint must set forth specific facts that make it reasonable to believe that defendant[] knew that a statement was materially false or misleading.  The rule requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged."  *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir. 1994) (citations and internal quotation marks omitted), superceded by statute on other grounds, 15 U.S.C. § 74u-4(b)(2).  This heightened pleading is imposed "even when the fraud relates to matters peculiarly within the knowledge of the opposing party."  *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 14 (1st Cir. 1984).

## I. Warranties

Santos's express warranty claim is doomed on several grounds.  As Santos concedes in the Amended Complaint, his television set malfunctioned well after the one-year expiration of the express warranty.  Thus, he has no claim for a breach of express warranty, any more than he would have a claim under a conventional insurance policy that had expired prior to the occurrence giving rise to the claim.  *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010) ("Because Plaintiffs have not alleged that the

defect presented itself during the Express Warranty period, Plaintiffs have failed to sufficiently plead that Sony breached the Express Warranty provided with the televisions.").   Santos's allegation that his television set "exhibited unmistakable symptoms (known only by SANYO) of degradation and impending premature failure within the express warranty [period]," does not serve to extend the warranty period by operation of law.  As Santos acknowledges in his brief, "case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects – defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."  *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (1st Cir. 1992).  Even were it not the case, Santos's claim would be barred by the four-year statute of limitations that governs breach of warranty claims under Massachusetts law.  *See* Mass. Gen. Laws ch. 106, § 2-725 ("(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .  (2) A cause of action accrues when the breach occurs*, regardless of the aggrieved party's lack of knowledge of the breach.*" (emphasis added); *see also Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 106-107 (1989).

    Santos maintains that the statutory impediments are of no moment because the

warranty itself is unconscionable and therefore its one-year limitation is unenforceable.[1]

Unconscionability is "determined on a case by case basis, giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 293 (1980) (citation omitted). "A party claiming unconscionability must prove both procedural and substantive unconscionability, that is, that there was an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *Leaf Fin. Corp. v. Carroll*, 2009 WL 112567, at *4 (D. Mass. Jan. 16, 2009) (citation and internal quotations omitted).

As an initial matter, Santos makes no attempt to give factual support to the assertion that the proposed class members "had an absence of meaningful choice in the purchase of class televisions . . . ." One need look no further for refutation than to the allegation of the Amended Complaint that "competitive televisions manufactured and sold at the time" outperformed SANYO's class televisions. Santos and the putative class members were free to purchase televisions from any one of the many

---

[1] Mass. Gen. Laws ch. 106, § 2-302 states in part: "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

manufacturers who compete fiercely in the consumer electronics market (as Santos himself ultimately did).

While the inability to make a showing on the procedural prong would normally end the unconscionability inquiry, Santos points to *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989), for the proposition that a manufacturer's purported knowledge of defects in its products nullifies any attempt to limit express or implied warranties. In finding that the district court should not have dismissed the claim of automobile buyers that the manufacturer's durational limitations on the implied warranty of merchantability were unconscionable, the Fourth Circuit concluded that

> [w]hen a manufacturer is aware that its product is inherently defective, but the buyer has no notice of [or] ability to detect the problem, there is perforce a substantial disparity in the parties' relative bargaining power. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies – including of course any warranty disclaimers – was neither knowing nor voluntary, thereby rendering such limitations unconscionable and ineffective.

*Carlson*, 883 F.2d at 296 (internal citation and quotations omitted).

This court is not convinced that the rule propounded by the Fourth Circuit has any practicable application in a real-world market economy. Other courts have thought the same.

> Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that

manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986); *see also Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 519-520 (D.N.J. 2008) (following *Abraham* and rejecting the argument that "a defect is actionable if it was known to defendants during the warranty period, but, was by fraud or concealment, made undiscoverable to plaintiffs"); *Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *5 (N.D. Cal. Apr. 9, 2010) (allegations that a manufacturer had knowledge of a latent defect and yet enforced the durational limitation of the warranty were not sufficient to state a claim of substantive unconscionability); *Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (manufacturer's knowledge that a part will fail after the expiration of a warranty period does not by itself make the durational limitation unconscionable).

Even if the court were to follow Santos's lead on this issue, the Amended Complaint would nonetheless fail to state a viable claim for breach of express warranty under the heightened pleading standard of Rule 9(b).  Santos alleges that SANYO management knew that the class televisions were defective from "warranty claims, claims supervisors, customer complaints and monitoring of performance of class

televisions by SANYO quality assurance employees." SANYO also was allegedly on notice of defects in the wiring boards from having had to replace boards in earlier models and from information about defects derived from the experience of other television manufacturers using similar components. While Santos lists various red flags that could have placed SANYO on notice, at the end of the day the list is just a list. The Amended Complaint provides nothing by way of particularized facts to suggest that SANYO ever had actual notice of the alleged defects.

The same is true of Santos's implied warranty claim. As an initial matter, although SANYO's express warranty purports to be exclusive of the implied warranty of merchantability, the disclaimer is unenforceable under the Magnuson-Moss Warranty Improvement Act (15 U.S.C. § 2301 *et seq.*), as well as Massachusetts law.[2] *See* Mass. Gen. Laws ch. 106, § 2-316A ("Any language, oral or written, used by a seller or manufacturer of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose . . . shall be unenforceable."). The Magnuson-Moss Act does permit a manufacturer to limit the duration of the implied warranties to that of the express warranty, although the parties dispute whether such a limitation is permitted under Massachusetts law.

---

[2] Because SANYO cannot disclaim the implied warranty of merchantability, Santos's contention that the disclaimer was ineffective because it was not conspicuous need not be addressed.

The court need not resolve the dispute, however, because the four-year statue of limitations for breach of contract claims also applies to implied warranties of merchantability and fitness for a particular purpose. *See Bay State-Spray*, 404 Mass. at 111 (breach of implied warranty claim brought more than four years after the date of purchase barred under Mass. Gen. Laws ch. 106, § 2-725). Because Santos did not bring his claim within four years of the purchase of his television, he fails to state a claim for breach of the implied warranty of merchantability.

## II. Common-Law Fraud

To make out a claim for fraudulent misrepresentation under Massachusetts law, a plaintiff must show that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458 (citation and internal quotations omitted).[3] Furthermore, a claim of "[f]raud by omission requires both concealment of material information and a duty requiring disclosure."

---

[3] Because this is a tort claim, the statute of limitations may be tolled by the discovery rule. *See* Mass. Gen. Laws ch. 260, § 12 ("If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.").

*Sahin v. Sahin*, 435 Mass. 396, 402 n.9 (2001); *see also Royal Bus. Group, Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir. 1991) (under Massachusetts law "there can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose.").

Santos's fraud claim fails initially because he cannot show that SANYO had a duty to disclose the "true" life of its class televisions.  In an attempt to weave such a duty, Santos asserts that the class televisions create "an unreasonable safety risk," and because "unanticipated fire is a serious safety issue, SANYO had an affirmative duty to disclose class television defects."  Pl.'s Br. at 25.  Santos does not provide any factual support for the claim that SANYO class televisions are prone to igniting electrical fires, probably because there is none.  (Santos does not identify a single instance of a house fire attributed to a SANYO television set).  His second attempt at pinning SANYO with a duty to disclose is the suggestion that because a famous brand name conveys an implied assurance of superior quality, SANYO had a duty to point out that its television sets were in fact inferior to those of its competitors.  This suggestion has no basis in Massachusetts law.  "Silence does not constitute a basis for claiming fraud and misrepresentation even where a seller may have knowledge of some weakness in the subject of the sale and fails to disclose it."  *Urman v. S. Boston Sav. Bank*, 424 Mass. 165, 168 (1997) (internal citation omitted).

Moreover, "[a] claim of fraud by omission is subject to the same Rule 9(b) pleading requirements as is a claim of affirmative deception." *In re WellNx Mktg. & Sales Practices Litig.*, 673 F. Supp. 2d 43, 50 n.13 (D. Mass. 2009)  As noted earlier, Santos has "not set[] forth specific facts that make it reasonable to believe that defendant knew that a statement [or omission] was materially false or misleading." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009); *see Moulton v. LG Elecs., USA, Inc.*, 2012 WL 3598760, at *3 (D.N.J. Aug. 21, 2012) ("Plaintiff does not plead dates, times or places of the alleged fraud. Plaintiffs further do not plead the circumstances surrounding how LG came to know of the alleged defects and [] affirmatively concealed them.").  Finally, other than the undocumented assertion that the television set should have lasted for some 50,000 hours, Santos has not pointed to any statements made by way of advertisements or other representations by SANYO that could have led him to reasonably believe that the expectation of a 50,000 hour working life was reasonable. *See Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *8 (D.N.J. Sept. 30, 2008) ("[Plaintiff] asserts that he relied on unspecified marketing and advertising materials related to the [ ] television he bought.  He further alleges that Samsung concealed the limitations of the television.  He does not, however, supply any details with respect to the marketing or advertising materials in question . . . . [Thus, he] fails to provide the particularity

13

required by Rule 9(b).").

## III. Negligent Misrepresentation

Massachusetts law permits a plaintiff to bring a claim for negligent misrepresentation without any showing that a defendant intended to engage in deception. *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8-10 (1982); *see also Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59 n. 25 (2004). However, "mere nondisclosure by itself generally will not support a cause of action for negligent misrepresentation . . . ." *Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676, 694 (D. Mass. 1993), citing *Nei v. Burley*, 388 Mass. 307, 310-311 (1983); *see also Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 372 (2009) ("bare nondisclosures" do not trigger liability for negligent misrepresentation). Because Santos has not adequately pled that SANYO made any false statements (intentional or not) or gave out partially misleading information requiring correction, he has failed to state a claim for negligent misrepresentation.

## IV. Chapter 93A

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Where a Chapter 93A action sounds in fraud, a plaintiff must plead such fraud with particularity. *See Zak Law Offices, P.C. v. Reed*, 2010 WL 2802068, at *4 (D.

14

Mass. July 13, 2010) ("Reed's claim, albeit brought pursuant to M.G.L. c. 93A, is a claim for fraud, and as such it must satisfy the heightened pleading standards applicable to such claims under Fed. R. Civ. P. 9(b)."). Because Santos's Chapter 93A claims are based on alleged misrepresentation and concealment, they fail under the same heightened pleading standards that doom his common-law claims of fraud.[4]

## V. Unjust Enrichment

A claim for unjust enrichment "presupposes that no valid contract covers the subject matter of a dispute." *Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 250 (1993). Moreover, "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006). Because Santos had a valid contract with SANYO, he cannot maintain an equitable action for unjust enrichment.

## VI. Supplemental Claims

Finally, because Santos fails to state a viable claim against SANYO, he cannot assert the potential claims of the tentative class members. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class

---

[4] Santos's Chapter 93A claims are not, however, inevitably foreclosed by the four-year statute of limitations as SANYO argues. The discovery rule applies to actions under Chapter 93A in the same way as it does to common-law torts. *See Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 993-994 (1st Cir. 1988).

15

establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *see also Cruz v. Farquharson*,  252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."); *Shirokov v. Dunlap, Grubb & Weaver, PLC*, 2012 WL 1065578, at *33 n.25 (D. Mass. Mar. 27, 2012) ("A named plaintiff who cannot establish her own case may not seek relief on behalf of other class members."), quoting *Evans v. Taco Bell Corp.*, 2005 WL 2333841, at *4 (D.N.H. Sept.23, 2005).

## ORDER

For the foregoing reasons, SANYO's motion to dismiss is <u>ALLOWED</u> without prejudice.  Santos's motion for leave to file a Second Amended Complaint is <u>ALLOWED</u>.  Any further Amended Complaint will be filed on or before May 24, 2013.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE